NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMIE T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.F., *Appellees*.

No. 1 CA-JV 16-0419
FILED 3-16-2017

Appeal from the Superior Court in Maricopa County
No. JD528510
The Honorable Rodrick Coffey, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

_____

**B E E N E**, Judge:

¶1        Jamie T. ("Mother") appeals the termination of her parental rights to A.F.[1]  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In February 2015, A.F.'s grandparents filed a dependency petition alleging Mother and Father abused drugs and Father was abusive to A.F.  A.F. was adjudicated dependent.

¶3        In order to work toward reunification, the Department of Child Services ("DCS") referred Mother for random drug screening, substance abuse and domestic violence treatment, parent-aide and parenting skills, and psychological and psychiatric evaluations.  Mother continually missed appointments, and rarely engaged in these services.  Mother also tested positive for marijuana and opiates on multiple occasions.  DCS also referred Mother for a psychological evaluation, but Mother did not appear for the evaluation, instead informing DCS that she would contact a provider for this service.  However, Mother failed to engage in this service for several months.  Eventually, Mother did participate in a psychological evaluation and was diagnosed with substance abuse disorders, trauma and stressor-related disorders, and borderline intellectual functioning.

¶4        Based on the psychological examination, DCS referred Mother for additional services in July 2016, but Mother rejected them.  The superior court also directed DCS to put in a specialized parent-aide referral if Mother consistently visited A.F. for thirty days, but Mother failed to do so.  DCS then moved to terminate Mother's parental rights to the child based on a history of chronic substance abuse, Arizona Revised Statutes

_____

[1]        The parental rights of A.F.'s father ("Father") were also terminated, but he is not a party to this appeal.

("A.R.S.") section 8-533(B)(3), as well as the nine-month out-of-home placement ground under A.R.S. § 8-533(B)(8)(a) (2017).[2]

**¶5**     After the severance hearing, the superior court terminated Mother's parental rights to A.F.  Mother timely appealed the termination of her parental rights.  We have jurisdiction pursuant to A.R.S. §§ 8-235 (2017), 12-120.21(A)(1) (2017), and 12-2101(A)(1) (2017).

## DISCUSSION

**¶6**     Custody of one's children is a fundamental, but not absolute, right.  *Michael J. v. Ariz. Dep't. of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  The superior court may terminate a parent's rights upon clear and convincing evidence of one of the statutory grounds in A.R.S. § 8-533(B), and upon finding by a preponderance of the evidence that termination is in the best interests of the child. *Michael J.*, 196 Ariz. at 248-49, ¶ 12. We review the superior court's termination order for an abuse of discretion; we will affirm the order unless its factual findings are clearly erroneous, "that is, unless there is no reasonable evidence to support them."  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998).

**¶7**     Mother asserts that DCS did not provide timely and appropriate reunification services that were tailored to her borderline intellectual functioning.

**¶8**     Before parental rights may be terminated on the grounds alleged here, DCS must prove by clear and convincing evidence that it made concerted efforts to preserve the child-parent relationship. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33 (App. 1999); *Vanessa H. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 252, 255-56, ¶¶ 18-20 (App. 2007).  DCS "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child. And, although futile efforts are not required, [DCS] must undertake measures with a reasonable prospect of success in reuniting the family." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94, ¶ 20 (App. 2009) (internal quotations omitted).

**¶9**     Mother relies on *Mary Ellen C.* as support for her contention that DCS failed to provide the necessary services to preserve her relationship with A.F.  Her reliance is misplaced.  In *Mary Ellen C.*, DCS did not refer or offer services to mother until a year after the dependency

---

[2]     Absent material revisions after the relevant date, we cite a statute's current version.

adjudication, and once offered, mother diligently followed up with DCS services, obtained employment, and stabilized her housing situation. 193 Ariz. at 187-89, ¶¶ 7, 10-11, 20.

¶10        Here, on the other hand, DCS provided ample opportunities and services to Mother for reunification, including referrals and services for transportation, substance abuse treatment, drug testing, counseling, a parent aide, a psychological evaluation and a psychiatric evaluation. Mother either failed to attend these services, or rarely participated when she did attend. Despite Mother's lack of efforts, DCS continued to refer her to services and Mother continued to miss appointments and ignore referrals. In short, Mother failed to remedy her situation despite diligent efforts by DCS.

¶11        Lastly, Mother contends that DCS failed to timely refer her for services after the psychological evaluation, and failed to refer her to services that were appropriate for her learning disabilities. The superior court, however, found that "[e]ven if DCS had promptly referred the recommended services for Mother, it would not change the fact that Mother did virtually nothing to demonstrate her sobriety . . . ." The superior court's finding is supported by Mother's failed drug tests, and admission of narcotics use three weeks prior to her psychological evaluation. The superior court found that "Mother could have participated in a psychological evaluation in August 2015," well before the termination proceeding. Instead, Mother delayed the evaluation until nine months after the initial referral. The superior court found that DCS did attempt to provide tailored services based on Mother's learning disabilities, offering Mother a specialized parent-aide on the condition that Mother consistently visited A.F. for 30 days. Mother, however, failed to comply. *See In re Matter of the Appeal in Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 & n.1 (App. 1994) (If a parent makes only "sporadic, aborted attempts to remedy" the circumstances, termination is appropriate. Compliance requires more than *de minimis* effort). We find no error in the superior court's conclusions that DCS made diligent efforts to provide Mother with appropriate reunification services.

## CONCLUSION

**¶12** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA