NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JANICE J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, H.L. A.L., *Appellees.*

No. 1 CA-JV 16-0508
FILED 5-4-2017

---

Appeal from the Superior Court in Maricopa County
No. JD528011
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee DCS*

_____

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Kent E. Cattani joined.

_____

**J O H N S E N**, Judge:

**¶1**          Janice J. ("Mother") appeals the superior court's order terminating her parental rights to H.L., born in October 2013, and A.L., born in January 2015 (collectively, "Children").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**          In August 2014, the Department of Child Safety ("DCS") placed H.L. in foster care after discovering she fell off a picnic table and was knocked unconscious.  The second child, A.L., was taken into care upon her birth, several months later.  Both children were found dependent as to Mother on March 24, 2015.

**¶3**          After the case plan was changed to severance and adoption on January 26, 2016, DCS moved to terminate Mother's parental rights on grounds of mental illness and out-of-home placement, pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) and -533(B)(8)(a)-(c) (2017).[1] After a hearing in September 2016, the superior court ordered Mother's parental rights severed on each of the charged grounds.  Mother timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A) (2017), 12-2101(A)(1) (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶4**          The right to custody of one's children is fundamental, but not absolute.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  The superior court may terminate a parent's rights upon clear and convincing evidence of one of the statutory grounds in A.R.S. § 8-533(B), *Michael J.*, 196 Ariz. at 249, ¶ 12, and upon a finding by a preponderance of the evidence that termination is in the best interests of the child, *Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 213, ¶ 5 (App. 2016).  We review the

_____

[1]          Absent material revision after the relevant date, we cite a statute's current version.

superior court's termination order for an abuse of discretion; we will affirm the order unless its factual findings are clearly erroneous, "that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998).

¶5        Under A.R.S. § 8-533(B)(8)(c), a parent's rights may be terminated upon a finding that: (1) the child has been in out-of-home placement for 15 months or longer; (2) the agency has made diligent efforts to provide appropriate reunification services; (3) the parent has been unable to remedy the circumstances that caused the placement; and (4) there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

¶6        On appeal, Mother does not dispute the Children had been in out-of-home placement for 15 months or longer at the time of the hearing. She does not argue DCS failed to make diligent efforts to provide reunification services, nor does she contest the court's best-interests findings. As to the 15-months time-in-care ground, Mother argues only that the court erred by finding that she is unable to remedy the circumstances that caused the placement and that she would not be capable of exercising proper and effective parental care and control in the near future.

¶7        After the dependency proceedings commenced, DCS provided Mother with services including drug testing, substance-abuse treatment, parent-aide services, supervised visits, a psychological evaluation, a bonding assessment and a best-interests assessment. Mother suffers from major depressive disorder and bipolar disorder. Accordingly, DCS also provided her with mental-health services through her existing provider, Southwest Network.

¶8        At the hearing, Mother's DCS case manager testified that she reviewed Mother's records from Southwest Network going back to 2009. The records showed that until February 2016, just after the case plan was changed to severance and adoption, Mother persistently failed to appear for counseling appointments or would cancel them, and did not consistently take her psychiatric medication. Based on conversations with representatives of Southwest Network, the case manager testified that Southwest had referred her for cognitive behavioral therapy, but Mother failed to attend. The case manager testified that despite being offered mental-health services throughout the dependency, Mother "has not

participated in mental health services long enough to demonstrate that she would remain stable."[2]

¶9 The case manager additionally explained that, as shown by a bonding report, Mother's mental health issues rendered her unable to meet the Children's needs even during a two-hour visit. The same bonding assessment, the case manager pointed out, concluded Mother had a "low frustration tolerance" that might lead to child abuse. Accordingly, the case manager concluded that Mother was unable to remedy the circumstances that caused the Children to be taken into care, and that there was a substantial likelihood that she would not be capable of exercising parental care and control in the near future.

¶10 The court also had before it a psychological evaluation by Len Sarff, Ph.D., who examined Mother on February 13, 2015. Sarff concluded that "[Mother's] emotional state is too volatile and compromised to help her make logical, and well thought out decisions." He wrote:

> The prognosis that she will be able to demonstrate minimally adequate parenting skills in the foreseeable future is guarded. Based on the clinical tests and collateral data at my disposal, a child in the care of [Mother] would be at risk of abuse and/or neglect at this time.

Sarff recommended Mother participate in individual and group therapy, cognitive behavioral therapy and, "once she is stable," family therapy. At the hearing, Sarff testified that it normally would take about a year of therapy to work through mental-health issues such as Mother's.

¶11 Also in evidence was a bonding assessment by S. Bryce Bennett, Psy.D., dated February 10, 2016, which concluded Mother was unable to effectively communicate the Children's needs and had difficulty dividing her attention between the two girls and managing their respective needs. Bennett further observed Mother has a low frustration tolerance, and stated that "[i]t is alarming that even though she has had specific parenting interventions, she has not integrated the information effectively

---

[2] Records from Southwest Network in evidence showed that Mother asked on February 23, 2016 to set up counseling sessions. Although the records contain an entry in May 2016 that Mother was attending weekly counseling sessions, she failed to appear for nursing appointments twice in July and once in August before trial in September.

enough to understand basic parenting skills and healthy disciplinary skills."

¶12         A report dated May 30, 2016 by a best-interests evaluator, Mary Oakley, Psy.D., concluded, "Although [Mother] has been demonstrating improvement, it appears she still needs a significant amount of progress before she will be able to effectively parent three children."

¶13         According to the record, before the change of plan, Mother failed to participate in mental-health counseling services and did not want to see the Children more than once a week. On appeal, Mother argues she discontinued her psychiatric medications during the first part of 2016 because she was pregnant with a third child. She offered no evidence, however, that she participated consistently with mental-health services before she became pregnant with that child. And she offered no explanation for her persistent failure to attend mental-health services before the case plan was changed to severance and adoption.

¶14         The superior court found that Mother's mental-health issues impaired her ability to parent:

> The evidence presented indicates that Mother's mental health deficits have contributed to her having a weak bond with both children, having an inability to split her attention between the children, and having a primary focus on herself over the children. During many of the times when professionals have been observing Mother's interaction with the children, Mother's mental health issues have interfered with her ability to do what is needed to protect the children's mental and physical safety.

¶15         Reasonable evidence supports the court's conclusion that DCS proved the elements justifying severance on the 15-months time-in-care ground. Mother's failure to diligently participate in mental-health services, along with the professional reports and records before the court, demonstrated that she had been unable to remedy the circumstances that caused the Children's placement, and likewise demonstrated a substantial likelihood that she would not be capable of exercising proper and effective parental care and control in the near future.

¶16         Because the court did not abuse its discretion in severing Mother's parental rights based on the 15-months time-in-care ground, we need not consider the other grounds on which it ruled. *See Michael J.*, 196 Ariz. at 251, ¶ 27.

## CONCLUSION

**¶17**　　For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA